Allegheny County

## **Allegheny County Department Of Court Records**

**Civil/Family Division Docket Report**

**Run Date and Time: 7/17/2026 - 15:24:58**

**Exhibit B**

---

**GD-26-006879**

**Wilson vs City of Pittsburgh Office of the Mayor e**

| | |
|---|---|
| **Filing Date:** | **Case Type:** |
| **7/10/2026** | **Miscellaneous Petition** |
| **Related Cases:** | **Court Type:** |
| | **General Docket** |
| **Consolidated Cases:** | **Current Status:** |
| | **Amended** |
| **Judge:** | |
| **Henry-Taylor Nicola** | **Jury Requested:** |
| | **N** |
| **Amount In Dispute:** | |
| **$ 0** | |

---

**--Parties--**

| LName | FName | MI | Type | Address | Initial Service Completion | Attorney |
|---|---|---|---|---|---|---|
| Wilson | Renee | | Plaintiff | 2037 Wylie Avenue Pittsburgh PA 15219 | -- | Self-Represented |
| Pittsburgh Bureau of Police | | | Defendant | 1203Westren Avenue Pittsburgh PA 15233 | -- | -- |
| City of Pittsburgh Office of the Mayor | | | Defendant | 414 Grant Street Suite 512 Pittsburgh PA 15219 | -- | -- |
| Pittsburgh Downtown Partnership | | | Defendant | 120 Boulevard of the Allies Pittsburgh PA 15222 | -- | -- |

---

**--Attorney--**

| LName | FName | MI | Type | Address | Phone |
|---|---|---|---|---|---|
| Self-Represented | | | Attorney | | -- |

---

**--Non Litigants--**

| LName | FName | MI | Type | Address | Phone |
|---|---|---|---|---|---|
| Henry-Taylor | Nicola | | Judge | | |

Top

---

**--Docket Entries--**

| Filing Date | Docket Type | Docket Text | Filing Party |
|---|---|---|---|
| 7/16/2026 | Amended | Second amended petition for emergency injunctive relief | Renee Wilson |
| 7/15/2026 | Amended | Petition for emergency injunctive relief | Renee Wilson |

| Filing Date | Docket Type | Docket Text | Filing Party |
|---|---|---|---|
| 7/13/2026 | Order of Court - IFP Granted | Order of court dated 07/13/2026. The Plaintiff (Renee Wilson) is permitted to proceed IFP without payment of costs or fees. Henry-Taylor, J. As per Rule 236 Notice, all case participants with verified email addresses were notified electronically on the day of filing, copies mailed to all other parties on 07/14/2026. | Nicola Henry-Taylor |
| 7/10/2026 | Petition to Proceed IFP | | Renee Wilson |
| 7/10/2026 | Petition Initiating Case | Emergency Petition for Injunctive Relief | Renee Wilson |

| --Judgments Against-- | | |
|---|---|---|
| Name | Amount | Satisfied(Y,N) |
| No Judgments Found | | |

| --Events Schedule-- | | | |
|---|---|---|---|
| Event Scheduled | Event Date & Time | Room Number | Judge/Hearing Officer |
| No Information Found | | | |

T114812
10 July 2026
15:48:28
GD-26-006879

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
## CIVIL DIVISION

### COVER SHEET

| Plaintiff(s) | CIVIL DIVISION |
|---|---|
| Renee Wilson | **Case Number :** $\boxed{GD} - \boxed{26} - \boxed{6879}$ |
| FILED  2026 JUL 10 PM 3:49  DEPT OF COURT RECORDS CIVIL/FAMILY DIVISION ALLEGHENY COUNTY PA | **Type of pleading :** Emergency For Injunctive Relief |
| | **Code and Classification :** |
| | **Filed on behalf of** |
| Vs **Defendant(s)** | Renee Wilson |
| City of Pittsburgh | (Name of the filing party) |
| Office of the Mayor | ☐ Counsel of Record  ☑ Individual, If Pro Se |
| Pittsburgh Downtown Partnership | Required Information:  Name: Renee Wilson  Address: 2037 Wylie Ave |
| Bureau of Police | Phone Number: 412-285-7887  Email Address: reneeLovePa.yahoo.com |
| | Attorney's State ID : |
| | Attorney's Firm ID : |

SA

# ALLEGHENY COUNTY COURT OF COMMON PLEAS

## CIVIL DIVISION

**Renee Wilson, Petitioner**

**v.**

**City of Pittsburgh; Office of the Mayor; Pittsburgh Downtown Partnership; Pittsburgh Bureau of Police, Respondents**

---

# FILING COVER SHEET

**Case Type:** Emergency Petition for Injunctive Relief

**Nature of Filing:**

- Emergency Petition for Injunctive Relief
- Request for Temporary Restraining Order (TRO)
- Request for Permanent Injunction
- Petition to Halt Unlawful Curfew Enforcement
- Petition to Prohibit Use of Pepper Spray or Chemical Agents on Minors
- Petition to Proceed *In Forma Pauperis* (Fee-Waiver Request)

**Filed By:**

Renee Wilson

Address: 2037 Wylie Ave Pittsburgh PA 15219

Email: _____ ReneeLove P@yahoo.com

**Date Filed:** July 10, 2026

**Attachments Included:**

- Petition for Injunctive Relief
- Request for Temporary Restraining Order
- Statement of Harm
- Pattern and Practice Section
- Exhibit List (A–L)

# VERIFICATION

I, **Renee Wilson**, verify that the statements made in this Petition are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of **18 Pa.C.S. § 4904**.

**Renee Wilson**
Date: July 10, 2026

---

# NOTARY ACKNOWLEDGMENT

**COMMONWEALTH OF PENNSYLVANIA**
**COUNTY OF ALLEGHENY**

On this 10th day of July 2026, before me, the undersigned Notary Public, personally appeared **Renee Wilson**, known to me or satisfactorily proven to be the person whose name is subscribed to the foregoing Verification, and acknowledged that she executed the same for the purposes therein contained.

Notary Public
Name: __
*Seal:* ___

---

# CERTIFICATE OF SERVICE

I, **Renee Wilson**, certify that on the 10th day of July 2026, I served a true and correct copy of the Petition for Injunctive Relief upon the following Respondents by hand delivery and/or first-class mail:

- City of Pittsburgh – Office of the Mayor  *414 Grant St Suite St 2 Pittsburgh PA 15219*
- Pittsburgh Downtown Partnership
- Pittsburgh Bureau of Police  *120 Boulevard of the Allies Pittsburgh PA 15222*
  *1203 Western Ave Pittsburgh PA 15233*

I certify that the foregoing is true and correct under **18 Pa.C.S. § 4904**.

**Renee Wilson**
Date: July 10, 2026

- Verification Page
- Notary Acknowledgment
- Certificate of Service
- Petition to Proceed *In Forma Pauperis*
- Affidavit of Financial Condition

---

# PETITION FOR INJUNCTIVE RELIEF

## I. INTRODUCTION

Petitioner **Renee Wilson** respectfully submits this Petition for Injunctive Relief to halt enforcement of the Market Square youth curfew and to prohibit the use of pepper spray or any chemical agent against minors in public spaces. The curfew was created, implemented, and enforced without lawful authority by the City of Pittsburgh, the Pittsburgh Downtown Partnership (PDP), private security hired by PDP, and the Pittsburgh Bureau of Police.

Youth were removed from Market Square beginning **April 23, 2026**, during the NFL Draft, without any ordinance, executive order, emergency declaration, public notice, or legal authorization. The City did not inform the public that a curfew existed until **June 2026**, more than two months after enforcement began.

Pepper spray was deployed against minors on **June 18, 2026**, in East Liberty, and **June 20, 2026**, in Market Square. These incidents occurred after weeks of undisclosed enforcement, demonstrating escalating and unconstitutional practices.

Petitioner seeks an injunction to halt the curfew, prohibit chemical agents against minors, and restore lawful conditions in public spaces.

---

## II. FACTUAL BACKGROUND

- Curfew enforcement began April 23, 2026, without legal authority.
- No public notice was provided until June 2026.
- Enforcement was based solely on age and presence, not conduct.
- Pepper spray was deployed against minors on June 18 and June 20.
- PDP and private security participated in enforcement without legal authority.
- Enforcement created manufactured conditions suggesting youth were "unattached."
- Public statements by City officials contributed to harmful narratives.

- Physical injury from pepper spray
- Emotional trauma
- Disruption of daily movement
- Stigmatization and discriminatory treatment
- Loss of trust in public institutions
- Ongoing risk of additional chemical-force deployment

These harms are immediate, irreparable, and ongoing.

---

# PATTERN AND PRACTICE OF UNLAWFUL ENFORCEMENT

Respondents engaged in repeated:

- Enforcement without legal authority
- Enforcement without public notice
- Presence-based removal
- Unlawful delegation to PDP/private security
- Escalation to chemical force
- Creation of manufactured conditions

This pattern demonstrates that future harm is certain without judicial intervention.

---

# EXHIBIT LIST (A–L)

Exhibits include:

- Timeline of enforcement
- Pepper-spray incident documentation
- Evidence of lack of legal authority
- PDP/private security involvement
- Manufactured evidence
- Community impact statements
- Maps of enforcement area
- Public statements by City officials

---

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: *Renee Wilson*

Signature: *Renee W*

Name: *Renee Wilson*

Attorney No. (if applicable): _____

Rev. 7/2018

# Supreme Court of Pennsylvania
## Court of Common Pleas
## Civil Cover Sheet
_A llegany County_ _____ **County**

| For Prothonotary Use Only: | TIME STAMP |
|---|---|
| Docket No: | |

_The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court._

**SECTION A**

**Commencement of Action:**
☐ Complaint     ☐ Writ of Summons     ☑ Petition
☐ Transfer from Another Jurisdiction     ☐ Declaration of Taking

Lead Plaintiff's Name: _Renee Wilson_

Lead Defendant's Name: _City of Pittsburgh_

**Are money damages requested?** ☐ Yes   ☑ No

Dollar Amount Requested: ☐ within arbitration limits
(check one)    ☐ outside arbitration limits

**Is this a _Class Action Suit?_** ☑ Yes   ☐ No

**Is this an _MDJ Appeal?_** ☐ Yes   ☑ No

Name of Plaintiff/Appellant's Attorney: _____

☑ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:**   Place an "X" to the left of the **ONE** case category that most accurately describes your **_PRIMARY CASE._** If you are making more than one type of claim, check the one that you consider most important.

**TORT** _(do not include Mass Tort)_
☐ Intentional
☐ Malicious Prosecution
☐ Motor Vehicle
☐ Nuisance
☐ Premises Liability
☐ Product Liability _(does not include mass tort)_
☐ Slander/Libel/ Defamation
☐ Other: _____

**MASS TORT**
☐ Asbestos
☐ Tobacco
☐ Toxic Tort - DES
☐ Toxic Tort - Implant
☐ Toxic Waste
☐ Other: _____

**PROFESSIONAL LIABLITY**
☐ Dental
☐ Legal
☐ Medical
☐ Other Professional: _____

**CONTRACT** _(do not include Judgments)_
☐ Buyer Plaintiff
☐ Debt Collection: Credit Card
☐ Debt Collection: Other
_____
_____
☐ Employment Dispute: Discrimination
☐ Employment Dispute: Other
_____
_____
☐ Other: _____

**REAL PROPERTY**
☐ Ejectment
☐ Eminent Domain/Condemnation
☐ Ground Rent
☐ Landlord/Tenant Dispute
☐ Mortgage Foreclosure: Residential
☐ Mortgage Foreclosure: Commercial
☐ Partition
☐ Quiet Title
☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
☐ Board of Assessment
☐ Board of Elections
☐ Dept. of Transportation
☐ Statutory Appeal: Other
_____
_____
☐ Zoning Board
☐ Other: _____
_____

**MISCELLANEOUS**
☐ Common Law/Statutory Arbitration
☐ Declaratory Judgment
☐ Mandamus
☐ Non-Domestic Relations Restraining Order
☐ Quo Warranto
☐ Replevin
☑ Other: _____
_____

_Updated 1/1/2011_

COURT OF COMMON PLEAS
ALLEGHENY COUNTY, PENNSYLVANIA

Renee Wilson

_____

_____

VS

the city of Pittsburgh
Office of the Mayor
Pittsburgh Downtown Partnership Pittsburgh
Bureau of Police

NO. GD-26-6879

## ORDER OF COURT

AND NOW, to wit, this __13th__ day of __July__ 20__26__.
upon consideration of the foregoing Petition, it is hereby ORDERED, ADJUDGED and DECREED
that the Petitioner be and hereby is permitted to file and pursue his/her appeal/action in the above
captioned case without payment of costs or fees. Including Sheriff Fees

BY THE COURT

_____

Honorable Nicola Henry-Taylor
Allegheny Court of Common Pleas
712 City-County Building
414 Grant Street
Pittsburgh, PA 15219

LM

*Motion Court*
*July 20 2024*

Renee Wilson, Pro Se
Pittsburgh, PA 15219
[email protected]
July 14, 2026

### IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
### CIVIL DIVISION

RENEE WILSON,            Docket No. GD-26-6879

    *Petitioner,*

                          **SECOND    AMENDED**

    v.                 **PETITION            FOR**

                          **EMERGENCY**

CITY OF PITTSBURGH;    **INJUNCTIVE RELIEF**

PITTSBURGH  BUREAU  OF**JURY        TRIAL**

POLICE;            **DEMANDED**

PITTSBURGH DOWNTOWN

PARTNERSHIP; and

MAYOR O'CONNOR, in his

official capacity,

    *Respondents.*

---

### SECOND AMENDED PETITION FOR EMERGENCY INJUNCTIVE RELIEF
### CURFEW IN CONTINUOUS EFFECT SINCE APRIL 23, 2026 — ONGOING AS OF JULY 15, 2026
### SECTION I: INTRODUCTION

Petitioner Renee Wilson, a resident of Pittsburgh, Allegheny County, Pennsylvania, files this Amended Petition for Emergency Injunctive Relief against Respondents City of Pittsburgh, Pittsburgh Bureau of Police, Pittsburgh Downtown Partnership, and Mayor O'Connor, in his official capacity (collectively, "Respondents"), seeking immediate judicial relief from the ongoing constitutional injuries inflicted upon Petitioner and similarly situated members of the public by the unlawful enforcement of a curfew that has no basis in any valid ordinance, executive order, emergency declaration, or other lawful authority.

**The unlawful conduct described in this Petition is not a past event. It is happening right now. As of the date of filing of this Petition — July 14, 2026 — the Pittsburgh**

**Downtown Partnership's curfew enforcement policy has been continuously in effect for 82 consecutive days, having been imposed since April 23, 2026. No ordinance enacted it on April 23, 2026. No ordinance enacted it on June 18, 2026. No ordinance enacts it today. Citizens of Pittsburgh — including Petitioner — remain subject to this unlawful restriction every single day it remains in force. This is not a case about what happened. This is a case about what is still happening.**

On June 18, 19, and 20, 2026, agents of the City of Pittsburgh, officers of the Pittsburgh Bureau of Police, and personnel coordinated by the Pittsburgh Downtown Partnership ("PDP")—a private nonprofit Business Improvement District organization—subjected Petitioner, her minor granddaughter Harmonii Gray (age 14), and scores of other Black residents and visitors to forced dispersal, harassment, threats of arrest, physical direction out of public spaces, and the use of pepper spray, all purportedly pursuant to a "curfew." No such curfew existed in law. None had been enacted by City Council. None had been issued by the Mayor pursuant to any valid emergency statute. None had been published, posted, or made available to the public in any form prior to enforcement. The enforcement policy that produced these injuries was not enacted for a single weekend. It has been in continuous effect since April 23, 2026, and remains in force as of the date of this filing.

The curfew enforced by Respondents was, in fact, a policy drafted by PDP—a private entity with no legislative power, no law enforcement authority, and no constitutional warrant to govern the conduct of citizens in public spaces. A policy is not a law. A policy cannot be enforced as a law. The enforcement actions of June 18–20, 2026 were ultra vires, unconstitutional, and void.

The events occurred in Market Square, a traditional public forum at the heart of the City of Pittsburgh. They occurred during a Juneteenth celebration—a commemoration of the emancipation of Black Americans from chattel slavery. The targets were overwhelmingly Black children and Black residents. The method included the use of pepper spray against a group of minors without individual probable cause. This constitutes collective punishment prohibited by the United States Constitution and the Pennsylvania Constitution.

Petitioner now seeks emergency injunctive relief to prevent Respondents from continuing or repeating this unlawful conduct.

## SECTION II: PARTIES

**1.** Petitioner Renee Wilson is an adult individual and resident of the City of Pittsburgh, Allegheny County, Pennsylvania. She is the founder of the Allegheny County African American Elders Council. She was present at Market Square on June 18–20, 2026, and was directly subjected to the unlawful enforcement actions described herein. She brings this Petition on behalf of herself and in her capacity as the guardian of her minor granddaughter, Harmonii Gray, age 14, who was also subjected to the unlawful enforcement actions described herein, including exposure to pepper spray. Petitioner brings this action on her own behalf and as guardian and next friend of minor Harmonii Gray pursuant to Pennsylvania Rule of Civil Procedure 2027. Harmonii Gray's claims are asserted herein through Petitioner as her guardian and next friend, she being a minor of age 14 years.

**2.** Respondent City of Pittsburgh is a municipality organized and existing under the laws of the Commonwealth of Pennsylvania, operating under a Home Rule Charter, with its principal offices at 414 Grant Street, Pittsburgh, Pennsylvania 15219. The City is responsible for the conduct of its police officers, agents, and instrumentalities, including the Pittsburgh Bureau

of Police and, upon information and belief, the coordination it maintains with the Pittsburgh Downtown Partnership.

**3.** Respondent Pittsburgh Bureau of Police is the law enforcement agency of the City of Pittsburgh, operating under the authority and direction of the City, with its principal offices at 1203 Western Avenue, Pittsburgh, Pennsylvania 15233. Officers of the Bureau participated in the enforcement of the nonexistent curfew on June 18–20, 2026. The Pittsburgh Bureau of Police is named herein solely as an agency and instrumentality of the City of Pittsburgh; all conduct of the Bureau and its officers is attributed to and the legal responsibility of the City of Pittsburgh as the Bureau's governing municipal authority. *See Regalbuto v. City of Philadelphia*, 937 F. Supp. 374, 377 (E.D. Pa. 1995).

**4.** Respondent Pittsburgh Downtown Partnership ("PDP") is a private, non-profit Business Improvement District organization operating in the downtown Pittsburgh corridor, located at 925 Liberty Avenue, Suite 310, Pittsburgh, Pennsylvania 15222. PDP is not a governmental body, not an elected authority, and not a law enforcement agency. At all relevant times, PDP acted jointly and in concert with the City of Pittsburgh and the Pittsburgh Bureau of Police in the enforcement of a curfew policy that PDP itself drafted, without any statutory or constitutional authority to do so. The City of Pittsburgh's own spokesperson publicly confirmed that PDP was the source of the enforcement policy applied on June 18–20, 2026.

**5.** Respondent Mayor O'Connor, named in his official capacity, is the chief executive officer of the City of Pittsburgh responsible for the issuance of executive orders, emergency declarations, and directives to the Pittsburgh Bureau of Police and other City agencies. Mayor O'Connor, upon information and belief, was aware of, authorized, or tacitly approved the enforcement actions at issue and failed to correct or rescind them. All claims against Mayor O'Connor are asserted against him solely in his official capacity as the head of the executive branch of the City of Pittsburgh.

## SECTION III: JURISDICTION AND VENUE

**6.** This Court has original jurisdiction over this matter pursuant to 42 Pa. C.S. § 931, which grants the Court of Common Pleas unlimited original jurisdiction in all cases except as otherwise provided by law.

**7.** This Court has jurisdiction to grant injunctive relief pursuant to Pa. R.C.P. 1531, which authorizes the Court to issue a preliminary injunction, special injunction, or temporary restraining order upon cause shown.

**8.** This Court has authority to grant declaratory relief pursuant to the Declaratory Judgments Act, 42 Pa. C.S. §§ 7531–7541.

**9.** Venue is proper in Allegheny County pursuant to Pa. R.C.P. 2103 because Respondents are located in and conduct their principal activities within Allegheny County, Pennsylvania, and all events giving rise to this Petition occurred in Allegheny County, Pennsylvania.

## SECTION IV: FACTUAL BACKGROUND

### A. Market Square as a Traditional Public Forum

**10.** Market Square is an open, publicly owned plaza located in the heart of downtown Pittsburgh, Allegheny County, Pennsylvania. Market Square has historically served as a venue for public assembly, community celebrations, political speech, and civic engagement. It is a traditional public forum within the meaning of the First Amendment to the United States Constitution and Article I, Section 20 of the Pennsylvania Constitution.

**11.** As a traditional public forum, Market Square is subject to the highest level of constitutional protection for the rights of assembly and free expression. The government

may not restrict access to a traditional public forum except pursuant to a narrowly tailored, content-neutral regulation serving a compelling governmental interest—and then only through duly enacted law, not policy directives issued by private organizations.

**B. The Juneteenth Celebration of June 18–20, 2026**

12. On June 18, 19, and 20, 2026, a Juneteenth celebration was held in and around Market Square. Juneteenth commemorates June 19, 1865, the date on which enslaved Black Americans in Texas learned of their emancipation—the last major group to be informed following the end of the Civil War. The holiday was formally recognized as a federal holiday in 2021 and is celebrated nationally as a day of freedom, community, and civic remembrance for Black Americans.

13. Petitioner Renee Wilson and her minor granddaughter, Harmonii Gray, age 14, were lawfully present in Market Square during the Juneteenth celebration as members of the public attending a community event in a public space.

**C. The Enforcement Actions**

14. On June 18, 19, and 20, 2026, agents of Respondents, including officers of the Pittsburgh Bureau of Police and private security personnel operating under the direction and coordination of the Pittsburgh Downtown Partnership, subjected individuals present in Market Square to enforcement of a purported "curfew."

15. The enforcement actions included: ordering members of the public to vacate Market Square; threatening arrest or citation for failure to disperse; physically directing individuals out of the public space; and deploying pepper spray against a group of minors, including Black children who were attending the Juneteenth celebration.

16. Petitioner and her minor granddaughter Harmonii Gray, age 14, were among those subjected to the unlawful enforcement actions described herein, including the effects of pepper spray deployed in the immediate vicinity.

17. At no time were Petitioner or other members of the public engaged in any unlawful conduct that would independently justify enforcement action by the Pittsburgh Bureau of Police.

**D. No Lawful Curfew Existed**

18. At all times relevant to this Petition, no curfew was legally in effect in the City of Pittsburgh applicable to Market Square or to the general public.

19. No curfew ordinance applicable to Market Square or to adults in the general public had been enacted by the City Council of Pittsburgh.

20. No executive order imposing a curfew on Market Square had been issued by the Mayor of the City of Pittsburgh.

21. No emergency declaration conferring authority to impose a curfew had been lawfully proclaimed in accordance with applicable Pennsylvania emergency management statutes, including 35 Pa. C.S. §§ 7701 et seq.

22. No written curfew order, directive, or notice was publicly posted at or near Market Square prior to or during the enforcement actions of June 18–20, 2026.

23. Respondents enforced a curfew that did not exist in law.

23-A. Critically, the unlawful curfew described in this subsection was not a temporary or isolated enforcement action limited to the Juneteenth weekend of June 18–20, 2026. The curfew enforcement policy drafted by the Pittsburgh Downtown Partnership has been in continuous and uninterrupted effect since April 23, 2026. As of the date of filing of this Petition — July 14, 2026 — the curfew has been actively imposed for 82 consecutive days.

No ordinance, executive order, or emergency declaration has been enacted at any point during this 82-day period to provide retroactive or ongoing legal authority for this enforcement. The constitutional violation is not historical. It is present, active, and ongoing.

## E. PDP Drafted the Enforcement Policy

24. The enforcement policy purportedly applied by officers and private security personnel on June 18–20, 2026 was not derived from any enacted ordinance or lawful executive order. It was, upon information and belief, a policy document drafted by the Pittsburgh Downtown Partnership.

25. The City of Pittsburgh's own spokesperson publicly confirmed that the Pittsburgh Downtown Partnership drafted the curfew enforcement policy that officers and private security personnel purported to enforce during the Juneteenth weekend of June 18–20, 2026.

26. This confirmation establishes that a private nonprofit Business Improvement District— not the City Council, not the Mayor acting pursuant to statutory authority, not any legislative body of the Commonwealth of Pennsylvania—was the source of the rule that police officers enforced as though it were law.

## F. B. Marshall's Claim of Authority

27. On June 20, 2026, B. Marshall, identified as the organizer of the Juneteenth event held in Market Square, publicly stated that he was personally "upholding the curfew" already in place for Juneteenth.

28. B. Marshall is a private citizen. He is not an elected official. He is not an officer of the City of Pittsburgh. He holds no appointment, no commission, and no statutory authority to declare, ratify, establish, or enforce any curfew or dispersal policy in any public space.

29. A private citizen's personal statement that he is "upholding" a policy does not create a law. It does not confer law enforcement authority upon private security personnel. It does not authorize the Pittsburgh Bureau of Police to enforce that policy as law. It is without any legal effect whatsoever.

## G. Collective Punishment of Black Children

30. The use of pepper spray against a group of minors attending a Juneteenth celebration, without individualized probable cause for each person subjected to force, constitutes collective punishment—an indiscriminate group-based enforcement action.

31. The targeted population was overwhelmingly Black children and Black residents participating in a celebration of Black emancipation. The use of collective enforcement— including chemical agents—against this population, in this context, without lawful authority, raises grave constitutional concerns under the First, Fourth, and Fourteenth Amendments to the United States Constitution, including the equal protection clause, and under Article I, Sections 20 and 26 of the Pennsylvania Constitution.

31-A. The events of June 18–20, 2026 did not occur in isolation. Prior documented incidents involving the deployment of pepper spray against minors in Pittsburgh public spaces — including a March 23, 2026 incident at Market Square in which approximately 20 individuals, many of them minors, were treated for pepper-spray exposure, and a June 18, 2026 incident at Liberty Green Park in East Liberty in which pepper spray was deployed against a gathering of more than 400 teenagers without a single arrest — establish a pattern of enforcement conduct that disproportionately exposes Black youth to chemical agents in public spaces without individualized cause. These incidents are documented in Exhibit D hereto. This

pattern of conduct is directly relevant to Petitioner's claims of irreparable harm, likelihood of success on the merits, and the public interest in injunctive relief.

## SECTION V: POLICIES CANNOT BE ENFORCED AS LAWS

### A. The Source and Nature of Law Under Pennsylvania's Constitutional Framework

32. Under the Constitution of the Commonwealth of Pennsylvania, the legislative power of the Commonwealth is vested in the General Assembly. Pa. Const. Art. II, § 1. The power to enact local ordinances within the City of Pittsburgh is vested in the City Council of Pittsburgh pursuant to the Pennsylvania Home Rule Charter and Optional Plans Law, 53 Pa. C.S. §§ 2901 et seq., and the Pittsburgh Home Rule Charter. The Mayor of the City of Pittsburgh may exercise executive authority—including emergency powers—only pursuant to, and within the bounds of, express statutory authorization. No other entity holds the power to enact law binding on the citizens of Pittsburgh.

33. A law, within the meaning of the Pennsylvania and United States Constitutions, is a duly enacted, publicly available, enforceable directive issued by a body possessing the sovereign authority to bind the citizenry. A "policy" issued by a private entity—however detailed, however widely distributed, however earnestly believed—is not a law. It is an internal or operational directive that may govern the conduct of the entity's own personnel but which has no force or effect upon members of the general public.

### B. The Pittsburgh Downtown Partnership Has No Legislative Authority

34. The Pittsburgh Downtown Partnership is organized as a private, nonprofit Business Improvement District under Pennsylvania's Business Improvement District Act, 73 P.S. §§ 820.501 et seq. A Business Improvement District is not a governmental body. It is not a legislative authority. It holds no power to enact rules binding on members of the public. It employs private security personnel who have no law enforcement authority under Pennsylvania law. *See* 22 Pa. C.S. § 501 et seq. (governing private police); 18 Pa. C.S. § 2711 (governing powers of arrest).

35. No provision of the Business Improvement District Act, the Pittsburgh Home Rule Charter, the Pittsburgh Code of Ordinances, or any Pennsylvania statute confers upon PDP the authority to draft, enact, or promulgate curfew policies or dispersal orders that are binding upon members of the general public in any public space.

36. The act of PDP drafting a curfew policy, and the act of the City of Pittsburgh deploying its police officers to enforce that policy against the general public, represents an unlawful delegation of public police power to a private entity. Such delegation is void under Pennsylvania law. *See Christ the King Manor, Inc. v. Secretary of Health*, 911 A.2d 624, 635 (Pa. Commw. Ct. 2006) (government may not delegate core governmental functions to private entities without adequate standards and oversight). The police power is among the most fundamental of governmental prerogatives and cannot be transferred to private business organizations.

### C. Enforcement of a Policy as Law Violates Due Process

37. The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that any law restricting individual liberty be sufficiently definite that a person of ordinary intelligence can understand what conduct is prohibited. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972). This requirement—known as the void-for-vagueness doctrine—also requires that enforcement not be left to the unfettered discretion of law enforcement officers.

**38.** The Due Process Clause of Article I, Section 9 of the Pennsylvania Constitution provides at least equivalent protections. *Commonwealth v. Heinbaugh*, 467 Pa. 1, 6 (1976).

**39.** A policy drafted by a private organization and not enacted by any legislative body fails to satisfy due process requirements on multiple grounds: it was never published as law; it was never made available for public review or comment; it was never subjected to any legislative or executive deliberation or approval process; and its terms were communicated to the public only at the moment of enforcement, by officers and private security personnel wielding physical authority. Members of the public had no notice—legal or practical—that any restriction applied to their presence in Market Square.

**40.** Enforcement of an unpublished, unenacted, privately drafted policy as though it carried the force of law violates the fundamental requirement that citizens have fair notice of the rules governing their conduct before they are subjected to enforcement consequences.

### D. Enforcement of a Policy as Law Violates the Non-Delegation Doctrine

**41.** The non-delegation doctrine, recognized under both the federal and Pennsylvania constitutions, prohibits legislative bodies from delegating their law-making power to private entities without supplying an intelligible principle to guide the exercise of that power. The core concern of the doctrine is the preservation of democratic accountability: those who make law must answer to the electorate; private organizations do not.

**42.** By permitting PDP to draft the curfew enforcement policy that was then enforced by sworn police officers, the City of Pittsburgh effectively delegated its law-making authority over public space to a private Business Improvement District—an entity accountable only to its member businesses, not to the residents of Pittsburgh, not to the electorate, and not to the courts under any administrative review framework. This delegation is constitutionally impermissible.

### E. A Private Citizen Cannot Ratify or Authorize Enforcement

**43.** As established in the Factual Background, B. Marshall publicly stated on June 20, 2026 that he was "upholding the curfew" for Juneteenth. This statement is legally meaningless as a source of enforcement authority.

**44.** Under Pennsylvania law, and under the Constitution of the United States, only a duly authorized governmental body acting pursuant to valid statutory authority may impose restrictions on the use of public spaces. No private individual—regardless of their role as event organizer, community leader, or any other capacity—may declare, ratify, extend, or authorize a curfew enforceable by law enforcement officers against members of the general public.

**45.** The statement of a private citizen that he is "upholding" a curfew does not create a curfew. It does not confer authority upon private security personnel. It does not supply the legal predicate necessary to justify police enforcement. Officers of the Pittsburgh Bureau of Police who enforced the purported curfew on the basis of B. Marshall's statement acted without lawful authority.

### F. Consequences: All Enforcement Actions Were Void

**46.** Because the curfew enforced on June 18–20, 2026 was not grounded in any valid ordinance, executive order, or emergency declaration, all enforcement actions taken pursuant to that purported curfew were ultra vires and void ab initio. *See Niles v. City of Pittsburgh*, 202 Pa. 19 (1902) (actions of municipal officers taken without legal authority are void); *Upper Dublin Township Auth. v. Bucks County Water & Sewer Auth.*, 694 A.2d 842, 845 (Pa. Commw. Ct. 1997) (ultra vires governmental acts are without legal effect).

**47.** Petitioner and the other individuals subjected to dispersal, threats, and pepper spray on June 18–20, 2026 were subjected to the exercise of government force without any lawful basis. The injuries they suffered—physical, constitutional, and dignitary—resulted directly from Respondents' unlawful conduct.

### SECTION V-A: THE CITY'S OWN CONDUCT CONFIRMS THE UNLAWFULNESS OF THE PDP CURFEW

**73.** On July 10, 2026 — five days before the Thursday July 16 hearing in this matter — Pittsburgh public radio station WESA 90.5 FM published a report by journalist Julia Maruca confirming two separate and legally distinct policies governing the conduct of minors in public spaces in the City of Pittsburgh.

**74. THE CITY POOL POLICY — PROPERLY ENACTED.** The first policy, announced by the Mayor's Office through an official press release, established a new "Family Swim" rule at City of Pittsburgh public pools, effective July 13, 2026. Under that policy, children under the age of 15 are required to be accompanied by an adult over 21 during weekend hours and during the 5:00–7:00 p.m. weekday hours at city pools. That policy was announced publicly. It identified a specific spokesperson. It applied to a specific category of city-owned property. It set specific hours. It was communicated through proper government channels. Mayor O'Connor's spokesperson, Molly Onufer, was quoted directly in the WESA report confirming that the pool policy is — in her own words — "not a sweeping chaperone policy."

**75. THE PDP MARKET SQUARE POLICY — PRIVATELY DRAFTED, UNLAWFULLY ENFORCED.** The second policy — the one at the center of this litigation — is categorically different. The same WESA report confirmed that "earlier this summer, the Pittsburgh Downtown Partnership instituted its own chaperone policy for Market Square after businesses complained of disruptive behavior." That policy was not announced by the Mayor's Office. It was not issued through a press release. No spokesperson was named. No hours were published. No City Council vote was taken. No ordinance was enacted. A private nonprofit Business Improvement District wrote a rule, and officers of the Pittsburgh Bureau of Police enforced it against Petitioner, her 14-year-old granddaughter Harmonii Gray, and scores of other Black residents at Market Square.

**75-A. THE CITY'S CLAIMED EXEMPTIONS ARE A SHAM.** The City of Pittsburgh has pointed to two pools — McBride Pool at 1785 McBride Avenue in Hazelwood and Sue Murray Pool at 301 Cedar Avenue on the North Side — as pools purportedly exempt from the Family Swim restriction. That representation is misleading. Both McBride and Sue Murray are open Monday through Friday only, from 12:00 p.m. to 5:00 p.m. Neither pool has any weekend hours whatsoever. The City's own policy closes both of these pools at exactly the hour — 5:00 p.m. on a weekday — when the overwhelming majority of working parents are still on their shift. There are no hours available at either pool on Saturday or Sunday, the days when shift workers in food service, retail, healthcare, transportation, and home health services are most often working. A policy that offers an exemption available only during the hours and days when the exempted families cannot use it is not an exemption. It is a closed door with a sign on it that says the door is open. Furthermore, the two pools that have been closed entirely this summer — Bloomfield Pool in Bloomfield and Highland Park Pool in Highland Park — served precisely the Black and working-class communities now being told they have options. They do not. They have been left, as the Mayor's own spokesperson acknowledged, to figure it out — without community input, without a public hearing, without a vote, and

without a single elected official standing in their neighborhood and explaining why their children's summer just changed overnight.

**76. THE CONTRAST IS DISPOSITIVE.** The City of Pittsburgh demonstrated on July 10, 2026 — four days before Petitioner filed this Petition — that it knows exactly how to create a lawful public conduct policy. It did so for pools: proper announcement, proper authority, proper channels. It did not do so for Market Square. It allowed a private corporation to write a curfew, directed its police officers to enforce it, and subjected Petitioner and her family to that enforcement without a single word of lawful authority behind it. The City cannot now claim ignorance of the proper procedure. Its own conduct five days before this hearing proves it knew the difference between a lawful policy and an unlawful one — and chose to enforce the unlawful one anyway.

**77. ONGOING ENFORCEMENT CONFIRMED BY PUBLISHED REPORTING.** The WESA report further confirmed that in the weeks preceding its July 10, 2026 publication, "several large gatherings of young people in recent weeks Downtown and in East Liberty have seen adults arrested and young people cited." This published, dated, independent journalistic account corroborates Petitioner's allegations of ongoing, active enforcement of the PDP curfew policy — enforcement that, as of the date of this filing July 15, 2026, has continued for 83 consecutive days without a single day of lawful authority behind it.

## SECTION VI: LEGAL CLAIMS
## COUNT I — VIOLATION OF CONSTITUTIONAL RIGHTS
(42 U.S.C. § 1983; Pennsylvania Constitution, Article I, §§ 7, 9, 20, 26)

**48.** Petitioner incorporates by reference all preceding paragraphs as though set forth fully herein.

**49.** Respondents City of Pittsburgh, Pittsburgh Bureau of Police, and Mayor O'Connor, in his official capacity, acting under color of state law, deprived Petitioner and Harmonii Gray of rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution, including:

**(a)** The right of peaceful assembly in a traditional public forum (First Amendment);

**(b)** The right to be free from unreasonable seizure (Fourth Amendment);

**(c)** The right to due process of law, including fair notice before the application of government force (Fourteenth Amendment, Due Process Clause);

**(d)** The right to equal protection of the laws, including freedom from collective punishment administered on the basis of race (Fourteenth Amendment, Equal Protection Clause).

**50.** Respondents' conduct also violated Article I of the Pennsylvania Constitution, including Section 7 (freedom of expression and assembly), Section 9 (due process), Section 20 (right to assemble), and Section 26 (prohibition on discrimination).

**51.** The enforcement of a curfew that did not exist in law, against individuals lawfully present in a traditional public forum, without individual probable cause, constitutes per se violations of the constitutional provisions identified above.

**52.** As a direct and proximate result of Respondents' unconstitutional conduct, Petitioner and Harmonii Gray suffered physical harm (exposure to pepper spray), emotional distress, deprivation of liberty, and deprivation of constitutional rights.

**52-A.** Municipal liability of the City of Pittsburgh under 42 U.S.C. § 1983 is established pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The unlawful enforcement of PDP's privately drafted curfew policy by sworn officers of the Pittsburgh

Bureau of Police constituted an official act carried out pursuant to, and reflecting, an official municipal policy or custom. The City's explicit adoption, authorization, and implementation of PDP's enforcement framework — confirmed by the City's own spokesperson — establishes that the constitutional deprivations suffered by Petitioner resulted from official municipal policy within the meaning of *Monell*. The City is therefore directly liable under § 1983 for the constitutional injuries caused by its officers acting pursuant to that policy.

### COUNT II — UNLAWFUL ENFORCEMENT / ULTRA VIRES ACTION

**53.** Petitioner incorporates by reference all preceding paragraphs as though set forth fully herein.

**54.** Respondents acted entirely beyond the scope of their lawful authority by enforcing a curfew that was not authorized by any valid ordinance, executive order, emergency declaration, or other lawful authority of the Commonwealth of Pennsylvania or the City of Pittsburgh.

**55.** The enforcement of a privately drafted policy as though it were law is ultra vires and without legal effect. All enforcement actions taken pursuant to the nonexistent curfew on June 18–20, 2026 are void.

**56.** Petitioner is entitled to a declaratory judgment that Respondents' enforcement actions were ultra vires and void, and to an injunction prohibiting Respondents from repeating such conduct.

### COUNT III — UNLAWFUL DELEGATION OF POLICE POWER / PRIVATIZATION OF LAW ENFORCEMENT

(as to Pittsburgh Downtown Partnership and City of Pittsburgh)

**57.** Petitioner incorporates by reference all preceding paragraphs as though set forth fully herein.

**58.** Respondent PDP, a private entity, had no legal authority to draft, promulgate, or enforce any curfew policy binding on members of the general public in Market Square or any other public space within the City of Pittsburgh.

**59.** Respondent City of Pittsburgh unlawfully permitted, authorized, or acquiesced in PDP's drafting and implementation of a curfew enforcement policy and then deployed sworn law enforcement officers to enforce that policy—thereby delegating its police power to a private entity in violation of the Pennsylvania Constitution and applicable law.

**60.** This unlawful delegation of the police power injured Petitioner and constitutes a continuing threat to the rights of all residents of Pittsburgh who use public spaces in the Downtown area.

### COUNT IV — CIVIL CONSPIRACY

(as to all Respondents)

**61.** Petitioner incorporates by reference all preceding paragraphs as though set forth fully herein.

**62.** Respondents City of Pittsburgh, Pittsburgh Bureau of Police, Pittsburgh Downtown Partnership, and Mayor O'Connor, in his official capacity, acting in concert, conspired to deprive Petitioner and other members of the public of their constitutional rights by jointly designing and implementing the unlawful enforcement policy applied on June 18–20, 2026. Upon information and belief, Respondents reached an explicit agreement or shared operational understanding — prior to or during the Juneteenth weekend of June 18–20, 2026 — to enforce the PDP-drafted curfew policy using the authority, personnel, and physical force of the Pittsburgh Bureau of Police, and to do so without any enacted ordinance,

executive order, or emergency declaration authorizing such enforcement. This agreement constitutes the common purpose element of civil conspiracy under Pennsylvania law. *See Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211 (1979).

**63.** PDP, as a private entity, acting in concert with state actors, is subject to liability under 42 U.S.C. § 1983. *See Dennis v. Sparks*, 449 U.S. 24, 27 (1980) (private party who conspires with state official to deprive another of constitutional rights acts under color of state law for purposes of § 1983).

**64.** As a direct and proximate result of this conspiracy, Petitioner suffered the injuries described herein.

## SECTION VII: IRREPARABLE HARM AND STANDARD FOR EMERGENCY INJUNCTIVE RELIEF

**65.** Petitioner incorporates by reference all preceding paragraphs as though set forth fully herein.

**66.** Under Pennsylvania Rule of Civil Procedure 1531 and Pennsylvania Supreme Court precedent, a party seeking a preliminary injunction must demonstrate: (1) that the relief is necessary to prevent immediate and irreparable harm; (2) that greater injury would result from refusing the injunction than from granting it; (3) that the injunction will restore the parties to the status quo; (4) that the petitioner is likely to prevail on the merits; (5) that the injunction is reasonably suited to abate the offending activity; and (6) that the public interest will not be harmed. *SEIU Healthcare Pennsylvania v. Commonwealth*, 628 Pa. 573, 584 (2014).

**67.** All elements are satisfied here:

**(a) Irreparable Harm.** The deprivation of constitutional rights — including the right of assembly, freedom from unreasonable seizure, and equal protection — constitutes per se irreparable harm for which no monetary remedy is adequate. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Critically, the harm here is not prospective — it is present, active, and continuous. The Pittsburgh Downtown Partnership's unlawful curfew policy has been in effect for 82 consecutive days as of the date of this filing, having been imposed since April 23, 2026. Every day that the curfew remains in force without lawful authority is a new and independent constitutional injury. Petitioner and every resident of Pittsburgh who uses the public spaces subject to this enforcement is suffering an ongoing deprivation of constitutional rights at this very moment. There is no more direct form of irreparable harm than a live, unchecked restriction on constitutional freedoms that has already lasted 82 days and shows no sign of being rescinded.

**(b) Balance of Harms.** Respondents suffer no cognizable harm from being required to comply with the Constitution. The harm to Petitioner and the public from continued unlawful enforcement of a nonexistent curfew is substantial and ongoing.

**(c) Status Quo.** An injunction requiring Respondents to enforce only lawfully enacted curfews restores the constitutional status quo that Respondents unlawfully disrupted.

**(d) Likelihood of Success on the Merits.** The facts are undisputed in their essential features: no curfew was enacted; PDP drafted the policy; police enforced it. The law is clear: a policy is not a law; police power cannot be delegated to a private nonprofit; enforcement without lawful authority is void. Petitioner is highly likely to prevail on the merits.

**(e) Appropriateness of Relief.** The injunctive relief sought—prohibiting enforcement of any curfew not grounded in valid enacted law—precisely targets the wrongful conduct and is narrowly tailored to remedy it.

**(f) Public Interest.** The public interest is served, not harmed, by requiring governmental actors to act within the bounds of their lawful authority. The public has an overriding interest in knowing that police power will not be wielded against them at the direction of private organizations acting without democratic accountability.

## SECTION VII-A: MOOTNESS DOES NOT APPLY

**68.** Respondents are expected to argue that this matter is moot because the Juneteenth celebration at Market Square on June 18, 19, and 20, 2026 has concluded. That argument fails on three independent and fully dispositive grounds.

**69. FIRST — THE CURFEW IS STILL IN EFFECT.** The curfew enforcement policy at issue in this proceeding has not ended. It has not been rescinded. It has not expired. It has not been replaced by any lawfully enacted ordinance, executive order, or emergency declaration. It was imposed by the Pittsburgh Downtown Partnership on or about April 23, 2026, and it remains in continuous, uninterrupted effect as of the date of this filing — July 15, 2026. A case is not moot when the challenged conduct is still occurring. There is nothing to moot. The violation is live. The harm is daily. The emergency is now.

**70. SECOND — VOLUNTARY CESSATION DOES NOT MOOT THIS CASE.** Even if Respondents were to rescind the curfew policy tomorrow — which they have not done — that act alone would not moot this proceeding. It is well established that a defendant's voluntary cessation of challenged conduct does not render a case moot unless it is absolutely clear that the conduct cannot reasonably be expected to recur. *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 189 (2000). Respondents have given no indication of any intent to rescind the policy. They have provided no written commitment that the curfew will not be reimposed. They have passed no ordinance eliminating the enforcement framework that produced the June 18–20 incidents. Voluntary cessation is not a defense available to Respondents on these facts.

**71. THIRD — CAPABLE OF REPETITION YET EVADING REVIEW.** Even if this Court were to find that the June 2026 events standing alone were insufficient to sustain an ongoing controversy — which Petitioner disputes — this case falls squarely within the "capable of repetition yet evading review" exception to mootness. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Juneteenth is an annual federal holiday. Market Square has hosted Juneteenth celebrations every year. The Pittsburgh Downtown Partnership's enforcement policy predates the June 2026 events and has continued beyond them. Without this Court's intervention, nothing prevents Respondents from subjecting Petitioner, her granddaughter Harmonii Gray, and the residents of Pittsburgh to the identical unlawful enforcement at the Juneteenth celebration in June 2027 — or at any other public event at Market Square between now and then. The challenged conduct is certain to recur on a timeline that will again evade full judicial review before the event concludes.

**72.** On all three independent grounds, this case is not moot. This Court has full jurisdiction to act. The question is not whether it can. The question is whether an unlawful, privately drafted, unlegislated curfew that has been enforced against Pittsburgh residents every day for 83 consecutive days will be permitted to continue while this Court waits. Petitioner respectfully submits that it should not.

## SECTION VIII: RELIEF REQUESTED

WHEREFORE, Petitioner Renee Wilson respectfully requests that this Court:

**(a)** Issue a Preliminary Injunction, and upon final hearing a Permanent Injunction, prohibiting Respondents from enforcing any curfew, dispersal order, or restriction on the use of any public space within the City of Pittsburgh unless:

**(i)** The curfew or dispersal order has been duly enacted by the City Council of Pittsburgh or issued by the Mayor pursuant to express statutory emergency authority;

**(ii)** The order is in writing;

**(iii)** The order is publicly available before enforcement begins; and

**(iv)** Written notice has been posted at or near the affected public space prior to enforcement;

**(b)** Issue a Declaratory Judgment that:

**(i)** The curfew enforced by Respondents on June 18–20, 2026 in Market Square was not authorized by any valid law, ordinance, executive order, or emergency declaration, and was therefore unlawful, unconstitutional, and void;

**(ii)** The Pittsburgh Downtown Partnership has no authority under Pennsylvania law to draft, promulgate, or enforce any curfew or dispersal policy binding on members of the general public;

**(iii)** No private individual or private organization may authorize, ratify, or extend a curfew enforceable by law enforcement against members of the general public;

**(iv)** The enforcement actions of June 18–20, 2026 violated the First, Fourth, and Fourteenth Amendments to the United States Constitution and Article I of the Pennsylvania Constitution;

**(c)** Issue an immediate Temporary Restraining Order, and thereafter a Preliminary and Permanent Injunction, requiring Respondents to immediately suspend the curfew enforcement policy that has been continuously in effect since April 23, 2026, pending this Court's determination of the lawful authority, if any, on which that policy rests; and further Issue an Order requiring Respondents to immediately cease and desist from directing, permitting, or coordinating enforcement of any curfew or dispersal order in any public space within the City of Pittsburgh except as authorized by duly enacted law;

**(d)** Award compensatory damages to Petitioner in an amount to be determined at trial;

**(e)** Award punitive damages against Respondents where permitted by applicable law, in light of the knowing, willful, and constitutionally infirm nature of the enforcement actions;

**(f)** Award Petitioner reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and applicable Pennsylvania law;

**(g)** Grant such other and further relief as this Court deems just and proper.

**SECTION IX: EXHIBIT LIST**
**EXHIBIT LIST**

**EXHIBIT A**          Statement of Pittsburgh City Spokesperson Confirming PDP Drafted Enforcement Policy

**EXHIBIT B**          Public Statement of B.
                       Marshall Claiming to "Uphold
                       the Curfew" for Juneteenth
                       (June 20, 2026)

**EXHIBIT C**          Witness Statement of
                       Harmonii Gray, Age 14 (In
                       Her Own Words) – Events of
                       June 18–20, 2026, Market
                       Square, Pittsburgh,
                       Pennsylvania

**EXHIBIT D**          Pepper Spray Incidents
                       Involving Minors – Market
                       Square & East Liberty
                       (March–June 2026):
                       Documented Pattern of
                       Chemical Force Against
                       Children in Public Spaces

**EXHIBIT E**          Declaration of Renee Wilson,
                       Petitioner, Under Penalty of
                       Perjury – Personal Account of
                       Enforcement Actions of June
                       18–20, 2026, Market Square,
                       Pittsburgh, Pennsylvania
                       (Pursuant to 28 U.S.C. § 1746
                       and 18 Pa. C.S. § 4904)

**EXHIBIT F**          Pittsburgh Downtown
                       Partnership Business
                       Improvement District
                       Organizational Records

**EXHIBIT G**          City of Pittsburgh Code of
                       Ordinances Excerpt: Absence

of Curfew Provision
Applicable to Market Square

## SECTION X: VERIFICATION

I, Renee Wilson, verify that the statements made in this Amended Petition for Emergency

Injunctive Relief are true and correct to the best of my knowledge, information, and belief. I

understand that false statements herein are made subject to the penalties of 18 Pa. C.S. §

4904, relating to unsworn falsification to authorities.

Renee Wilson
Petitioner, Pro Se
Pittsburgh, Pennsylvania
Date: _____ 7- 15-26 _____

## RESPECTFULLY SUBMITTED,

Renee Wilson
Petitioner, Pro Se
Pittsburgh, Pennsylvania
[email protected]
Date: __ 7- 15- 26 __

RENEE WILSON, individually
and as Guardian
and Next Friend of
HARMONII GRAY, a Minor,
    Petitioner,

v.

CITY OF PITTSBURGH;
PITTSBURGH BUREAU
OF POLICE; PITTSBURGH
DOWNTOWN
PARTNERSHIP; and MAYOR
O'CONNOR,
in his official capacity,
    Respondents.

Docket No.
**GD-26-
6879**

**PROPOSED
ORDER**

## ORDER OF COURT

AND NOW, this _____ day of July, 2026, upon consideration of Petitioner's Second Amended Petition for Emergency Injunctive Relief, the Supplemental Brief in Support thereof, and any argument presented at the emergency hearing held this date, and the Court having found that Petitioner has demonstrated:

(a) a substantial likelihood of success on the merits of her constitutional claims;

(b) that Petitioner and the residents of Pittsburgh are suffering immediate, ongoing, and irreparable harm by reason of the Pittsburgh Downtown Partnership's curfew enforcement policy, which has been in continuous effect since April 23, 2026 — a period of 83 consecutive days — without any ordinance, executive order, or emergency declaration providing lawful authority for that enforcement;

(c) that the balance of harms weighs decisively in favor of relief, as Respondents suffer no cognizable harm from being required to comply with the Constitution; and

(d) that the public interest is served by the immediate vindication of the constitutional rights of Pittsburgh residents;

**IT IS HEREBY ORDERED** that:

**1.** Respondents City of Pittsburgh, Pittsburgh Bureau of Police, Pittsburgh Downtown Partnership, and Mayor O'Connor, their officers, agents, employees, contractors, and all persons acting in concert with them, are **IMMEDIATELY ENJOINED** from enforcing, directing, coordinating, or authorizing any curfew, dispersal order, or chaperone policy in any public space within the City of Pittsburgh that has not been enacted by duly enacted City ordinance or issued pursuant to a valid emergency declaration by the Mayor under applicable Pennsylvania law.

**2.** The Pittsburgh Downtown Partnership's curfew enforcement policy in effect at Market Square since on or about April 23, 2026 is hereby **SUSPENDED**, effective immediately upon entry of this Order, pending further order of this Court.

**3.** This Order shall remain in effect pending a full preliminary injunction hearing, which the Court hereby schedules for _____, 2026 at _____ a.m./p.m.

**4.** Respondents shall appear at said hearing to show cause why a Preliminary Injunction should not be entered making the relief granted herein permanent pending final resolution of this matter.

**5.** Service of this Order shall be made upon all Respondents by Petitioner forthwith, by hand delivery, email, or such other means as Petitioner has available, and proof of service shall be filed with the Prothonotary within three (3) days.

RENEE WILSON, individually Docket No.
and as Guardian **GD-26-**
and Next Friend of · **6879**
HARMONII GRAY, a Minor,
    Petitioner,  **PROPOSED**
       **ORDER**
v.

CITY OF PITTSBURGH;
PITTSBURGH BUREAU
OF POLICE; PITTSBURGH
DOWNTOWN
PARTNERSHIP; and MAYOR
O'CONNOR,
in his official capacity,
    Respondents.

## ORDER OF COURT

AND NOW, this _____ day of July, 2026, upon consideration of Petitioner's Second Amended Petition for Emergency Injunctive Relief, the Supplemental Brief in Support thereof, and any argument presented at the emergency hearing held this date, and the Court having found that Petitioner has demonstrated:

(a)  a substantial likelihood of success on the merits of her constitutional claims;

(b)  that Petitioner and the residents of Pittsburgh are suffering immediate, ongoing, and irreparable harm by reason of the Pittsburgh Downtown Partnership's curfew enforcement policy, which has been in continuous effect since April 23, 2026 — a period of 83 consecutive days — without any ordinance, executive order, or emergency declaration providing lawful authority for that enforcement;

(c)  that the balance of harms weighs decisively in favor of relief, as Respondents suffer no cognizable harm from being required to comply with the Constitution; and

(d) that the public interest is served by the immediate vindication of the constitutional rights of Pittsburgh residents;

**IT IS HEREBY ORDERED** that:

**1.** Respondents City of Pittsburgh, Pittsburgh Bureau of Police, Pittsburgh Downtown Partnership, and Mayor O'Connor, their officers, agents, employees, contractors, and all persons acting in concert with them, are **IMMEDIATELY ENJOINED** from enforcing, directing, coordinating, or authorizing any curfew, dispersal order, or chaperone policy in any public space within the City of Pittsburgh that has not been enacted by duly enacted City ordinance or issued pursuant to a valid emergency declaration by the Mayor under applicable Pennsylvania law.

**2.** The Pittsburgh Downtown Partnership's curfew enforcement policy in effect at Market Square since on or about April 23, 2026 is hereby **SUSPENDED**, effective immediately upon entry of this Order, pending further order of this Court.

**3.** This Order shall remain in effect pending a full preliminary injunction hearing, which the Court hereby schedules for _____, 2026 at _____ a.m./p.m.

**4.** Respondents shall appear at said hearing to show cause why a Preliminary Injunction should not be entered making the relief granted herein permanent pending final resolution of this matter.

**5.** Service of this Order shall be made upon all Respondents by Petitioner forthwith, by hand delivery, email, or such other means as Petitioner has available, and proof of service shall be filed with the Prothonotary within three (3) days.

BY THE COURT:


J.
Allegheny County Court of Common Pleas
Civil Division

Date:   7- 15- 26

*Petitioner respectfully requests that the Court enter this Order. Presented by Renee Wilson, Petitioner Pro Se, Docket No. GD-26-6879, July 16, 2026.*

Mrs. Renee Wilson
412-808-8985
Reneeplove@yahoo.com

BY THE COURT:


J.
Allegheny County Court of Common Pleas
Civil Division


Date:   7 - 15 - 26

*Petitioner respectfully requests that the Court enter this Order. Presented by Renee Wilson, Petitioner Pro Se, Docket No. GD-26-6879, July 16, 2026.*

Mrs. Renee Wilson
412-808-8985
Reneeplove@yahoo.com